# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2629-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

O.P.,[1]

     Defendant-Appellant,

and

K.V.

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.V.,

     a Minor.

_____

---

[1] We use initials and pseudonyms to protect the privacy rights of the litigants and the child. R. 1:38-3(d)(12).

Argued January 24, 2019 – Decided May 2, 2019

Before Judges Fuentes, Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0154-17.

Ryan T. Clark, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Ryan T. Clark, on the brief).

Mohamed Barry, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Jason W. Rockwell, Assistant Attorney General, of counsel; Mohamed Barry, on the brief).

Rachel E. Seidman, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Rachel E. Seidman, on the brief).

PER CURIAM

Defendant O.P. (Olga) is the biological mother of M.V. (Mary), a child born in 2008. She appeals from the final judgment of guardianship entered against her by Judge Bernadette N. De Castro terminating her parental rights to her daughter. The genesis of the guardianship complaint filed against defendant by the Division of Child Protection and Permanency (Division) here is found in DCPP v. O.P. and K.V., No. A-5602-16 (App. Div. May 2, 2019), in which this court affirmed a final order issued by Judge De Castro in which:

> Judge De Castro found, by a preponderance of the evidence, that defendant abused and neglected her seven-year-old daughter within the meaning of N.J.S.A. 9:6-8.21(c)(4), by failing to report the sexual abuse committed by the child's biological father for eighteen months, by allowing the child to continue to reside in the same premises as the perpetrator of the abuse, and by allowing the perpetrator to have unsupervised access to the child. Defendant's conduct constituted gross negligence and placed the child at a substantial risk of harm.
>
> [O.P., slip op. at 16.]

This court held Judge De Castro's findings were supported by a preponderance of the competent, credible evidence the Division presented at the fact-finding hearing. O.P., slip op. at 4-15. The Division proved "defendant acted with reckless disregard for her daughter's safety." O.P., slip op. at 17 (citing G.S. v. Dep't of Human Servs., 157 N.J. 161, 182 (1999)). Based on the parties' failure to participate in court-ordered services, the Division filed a verified guardianship complaint seeking to terminate the parental rights of both defendant and Mary's biological father K.V. (Kevin). On July 12, 2017, the Division commenced this guardianship action. On the same date, the Family Part terminated the Title 9 action, and Mary's legal custody continued with the Division.

A-2629-17T1

Judge De Castro conducted a guardianship trial on January 8, 9, and 12, 2018. An attorney assigned by the Office of the Public Defender, Office of Parental Representation appeared on defendant's behalf. Defendant did not appear at any of these trial dates. Kevin entered an identified surrender of his parental rights on September 27, 2017. He is not a part of this appeal. By the time the guardianship trial began, Mary had been residing with her paternal grandparents for over a year.

As the judge who presided over the fact-finding hearing in the Title 9 case, Judge De Castro was thoroughly familiar with defendant's personal history of sexual abuse as a child, her lifelong struggle with mental illness, and her documented substance abuse problems. Division caseworker Jessica Ceballos testified at length about the mental health services offered to defendant. Unfortunately, defendant either failed to attend the programs or attended sporadically. She was ultimately terminated due to her aggressive behavior, failure to attend, or a combination of these factors.

Defendant's interactions with Mary during the pendency of these proceedings were sporadic and emotionally traumatic to the child. Mary did not like her mother's "hostility towards others . . . [and] remarks [defendant] would make regarding . . . [Mary's] paternal grandparents." Of particular concern to

Ceballos was the behavior defendant exhibited during a visit scheduled to celebrate the child's ninth birthday.

> Q. What happened on that date?
>
> A. So, it was [Mary's] birthday, ninth birthday. And we had brought [Mary] to the Division . . . office to see her mother. Her mother wanted to see her. . . . While this occurred, the Division met with [defendant] on the fourth floor to . . . re-engage with her and . . . explore having an FTM, a family team meeting.
>
> . . . .
>
> A. And you know, we explored if she received a court order. She said . . . to stop sending her . . . harassing mail. So, to the point she became so combative and . . . hostile about . . . that [and] security had to get involved.

Ceballos testified that she was able to calm down defendant sufficiently to make the visit with the child possible. After the visit ended, Mary told Ceballos she did not want to see her mother again. The Division referred Mary for psychotherapy treatment with psychologist Frank Dyer, Ph.D., who was also admitted as an expert witness at the guardianship trial without objection. Judge De Castro also reviewed and relied on the report of a psychological examination of defendant performed by Dr. Samiris Sostre on September 21, 2016. Dr. Dyer also interviewed Mary before the June 2017 bonding evaluation.

A-2629-17T1

The psychological experts presented by the Division to Judge De Castro reached a general consensus regarding Mary's relationship with defendant. The child was not bonded to her biological mother. The permanent severance of contact with defendant was in the child's best interest and would not cause her emotional harm. Judge De Castro found, and the record supports, that defendant "is vulnerable to poor judgment, emotional volatility, and irrationally hostile behaviors." Defendant lacks the insight and stability to protect her daughter from emotional harm. Defendant's failure to report the egregious sexual molestation her six-year-old daughter endured by her own biological father is the most powerful evidence of defendant's severely impaired judgment. As Dr. Dyer explained:

> Placing a child in the care of somebody who suffers from [borderline personality] disorder when it is not adequately addressed by therapy or medication or some combination of therapy and medication would expose the child to very distressing, frightening, disorganizing mood states and emotional flare-ups on the part of the individual caring for them. Typically, it would expose a child to extreme conflict in whatever intimate relationships the caretaker may be involved in.

Conversely, according to Dr. Dyer, Mary has formed a strong bond with her paternal grandparents, which is reciprocated by these adults. Based on his bonding evaluations, Dr. Dyer opined, within a reasonable degree of

psychological certainty, that Mary is emotionally bonded to her paternal grandparents. His testimony included the following elaboration on this issue:

> It's my opinion, again, to a reasonable degree of psychological certainty, that the benefits to [Mary] of permanency with her [paternal] grandparents, to whom she is attached, and by whom she explicitly states she wishes to be adopted, that the benefits of that relationship would far outweigh any negative impact of a loss of the -- the mother's parental rights to her.

The paternal grandparents have expressed a desire to adopt the child. It is vitally important to emphasize that Kevin will not be a part of this arrangement and will not have any contact with the child. The record shows that the Division's case was largely uncontested because defendant did not attend any part of the trial.

Our standard of review of a Family Part judge's decision based on a combination of testimonial evidence and the application of legal principles involving the court's subject matter jurisdiction is well-settled. We are bound to defer to the trial judge's expertise in this area of law, provided the decision is supported by competent evidence in the record. Cesare v. Cesare, 154 N.J. 394, 412 (1998). However, a trial judge's interpretation of the law and legal findings are reviewed de novo. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552-53 (2014).

Parents have a fundamental constitutional right to raise their children. Stanley v. Illinois, 405 U.S. 645, 651 (1972); NJ Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). "However, the constitutional protection surrounding family rights is tempered by the State's parens patriae responsibility to protect the welfare of children." N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 261 (App. Div. 2002) (citing Parham v. J.R., 442 U.S. 584, 603 (1979)). "The balance between parental rights and the State's interest in the welfare of children is achieved through the best interests of the child standard." In re Guardianship of K.H.O., 161 N.J. 337, 347 (1999).

The Legislature and our Supreme Court resolved the constitutional tension between parental rights and the welfare of children. In A.W., the Court examined four factors that the Division must prove by clear and convincing evidence before parental rights may be terminated. 103 N.J. at 604-11. These four factors were then codified by the Legislature in N.J.S.A. 30:4C-15.1(a):

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause

serious and enduring emotional or psychological harm to the child;

(3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

These four factors "are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348.

Here, defendant argues the Division did not present sufficient evidence to prove, by clear and convincing evidence, any one of the four prongs codified in N.J.S.A. 30:4C-15.1(a). Defendant's arguments lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by Judge De Castro in her memorandum of opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2629-17T1